# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| WALTER MITCHELL, | ) | CASE NO. 5:18-CV-875 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| BUCKEYE STATE CREDIT UNION, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Plaintiff Walter Mitchell ("Mitchell") brought suit against defendant Buckeye State Credit Union ("Buckeye") for injunctive relief under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181 *et seq.* (Doc. No. 1 (Complaint ["Compl."]).) This matter is before the Court on Buckeye's motion to dismiss the complaint under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 4 ["Mot."]).) Mitchell opposes the motion (Doc. No. 5 ["Opp'n"]), and Buckeye has filed a reply (Doc. No. 7 ["Reply"]).[1] Because the Court finds that Mitchell lacks standing to bring this action, the Court need not reach Buckeye's alternative argument that the complaint fails to state a cause of action. Accordingly, for the reasons that follow, this action is dismissed.

## I. BACKGROUND

Mitchell is "permanently blind and uses a screen reader in order to access the internet and read website content[.]" (Compl. ¶ 4.) Buckeye "is a credit union" that "owns and operates credit

---

[1] The parties have also filed notices of supplemental authorities. (*See* Doc. Nos. 8, 9, 10, 11.) The Court has considered these filings in resolving the present dispositive motion.

union locations in Ohio." (*Id.* ¶ 5.) In connection with its operations, Buckeye also operates a website at "buckeyecu.org." (*Id.* ¶¶ 4–5.) Mitchell alleges that he attempted to access Buckeye's website on multiple occasions but was "denied the full use and enjoyment of the facilities and services of buckeyecu.org as a result of accessibility barriers on buckeyecu.org." (*Id.* ¶ 4.) He complains that barriers, such as "[l]inked image missing alternative text[,]" "[e]mpty or missing form labels[,]" and "[e]mpty links that contain no text[,]" have denied Mitchell and other "blind individuals equal enjoyment of and access to the services, privileges, advantages, and accommodations and information made available through buckeyecu.org by preventing them from freely navigating buckeyecu.org." (*Id.* at ¶¶ 14, 15.) Mitchell further alleges that, as a result of these barriers, he has been "deterred" from visiting Buckeye's physical locations. (*Id.* at ¶ 17.)

As governed by statute, credit unions are membership organizations whose charters prescribe a defined field of membership. *See* 12 U.S.C. § 1759(b)(1)–(3). Buckeye's membership field consists of:

> [p]ersons who live, work, attend school, volunteer, or worship in the following counties: Lake County, Stark County, & Summit County, as well as the city of Shaker Heights, Ohio. Membership is also open to employees of educational organizations in the eastern suburbs of Ohio, as well as to the employees or persons retired as pensioners or annuitants from the employment of a Buckeye State Credit Union select employer group. Immediate family members of current members are also eligible for membership.

Buckeye State Credit Union Website, https://www.buckeyecu.org/sign-up (last visited February 28, 2019). Mitchell does not allege that he is eligible to be a member of Buckeye, and he does not dispute Buckeye's position that he is ineligible. Rather, he alleges that he has been a member of a different credit union—Kemba Credit Union ("Kemba")—since May 2015. (Compl. ¶ 6.)

According to the complaint, Kemba and Buckeye are members of the Co-Op Shared Branch network of credit unions. (*Id*.)

## II. STANDARD OF REVIEW

The Sixth Circuit recognizes two kinds of motion to dismiss for lack of standing pursuant to Rule 12(b)(1): a facial attack and a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A *facial* attack merely questions the sufficiency of the pleading. *Id*. In deciding a facial motion to dismiss, "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id*. A *factual* attack, on the other hand, is an attack on the factual existence of standing. *Id*. In deciding a factual motion to dismiss, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. (internal citation omitted). In either case, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus*., Inc., 798 F.2d 913, 915 (6th Cir. 1986) (emphasis omitted). Buckeye presents a factual attack in this case.

## III. LAW ON STANDING

Buckeye maintains that Mitchell lacks standing to bring the present action. "To satisfy Article III standing, [Mitchell] must show, among other things, that [he] 'suffered an injury in fact[.]'" *Sumpter v. Wayne Cty*., 868 F.3d 473, 490–91 (6th Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). An "injury in fact" is characterized as "an invasion of a legally protected interest" that is "concrete and particularized," "actual or imminent," and "not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, --U.S.--, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016) (quotation marks and citation omitted). In other

words, "[t]he plaintiff must show that he or she sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and the injury or threat of injury [is] both real and immediate . . . ." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) (internal quotation marks and citations omitted).

A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549. A violation of a statute "divorced from any concrete harm" is not sufficient to allege an injury-in-fact sufficient to meet Article III standing requirements. *Id*.

Additionally, "[b]ecause the ADA provides for injunctive relief, [p]laintiffs who encounter barriers at public accommodations have standing to bring claims only if they show a plausible intention or desire to return to the place but for the barriers to access." *Kramer v. Midamco*, 656 F. Supp. 2d 740, 747 (N.D. Ohio 2009); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) ("'Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to merely conjectural or hypothetical—threat of *future* injury.'") (emphasis in original). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974). "Intent to return to the place of injury 'some day' is insufficient." *Kramer*, 656 F. Supp. 2d at 747 (quoting *Lujan*, 504 U.S. at 564 ("[s]uch 'some day' intentions—without any description of concrete plans, or indeed any specification of when the some day will be—do not

support a finding of the 'actual or imminent' injury that our cases require") (quotation marks omitted)).

## IV. DISCUSSION

The Court does not write on a clean slate. Other courts have previously addressed the question of whether a plaintiff has standing to bring a Title III accessibility action against a credit union whose membership is restricted. In *Carello v. Aurora Policeman Credit Union*, No. 17 C 9346, 2018 WL 3740545 (N.D. Ill. Aug. 7, 2018), a district court found that a plaintiff, who was ineligible for membership with a defendant credit union, could not demonstrate an "injury in fact." There, the court reasoned that "[s]ince [plaintiff] cannot be a member [of the credit union], even if the website were made accessible to people who are blind, any increased accessibility of the website would not be of any material benefit to [the plaintiff]. And since the relief [the plaintiff] seeks would not benefit him, he has failed to allege an injury." *Id*. at *1. In reaching this conclusion, the court in *Carello* cited recent decisions dismissing "nearly identical" actions for lack of standing. *Id*. (collecting cases, including *Mitchell v. Dover-Phila. Fed. Credit Union*, 5:18CV102, 2018 WL 3109591 (N.D. Ohio June 25, 2018), another case brought by Mitchell in this judicial district).

The Court finds the reasoning in *Carello* persuasive. While Mitchell alleges that the barriers existing on Buckeye's website prohibited him from "independently and privately investigat[ing]" Buckeye's services and physical locations, the fact remains that the information contained on the website is only useful for people who can become members of Buckeye. (Compl. ¶ 16.) The removal of these barriers would not have the effect of providing Mitchell with accessibility to products or services of Buckeye as Mitchell is not eligible to take

5

advantages of these benefits. Further, given that Mitchell has no "plausible material reason for accessing" Buckeye's website, he cannot demonstrate a legitimate desire to return, a prerequisite for injunctive relief under Title III of the ADA. *See Carello,* 2018 WL 3740545, at *2; *see also Kramer*, 656 F. Supp. 2d at 747.

In an effort to avoid a finding that he lacks standing as a non-member of the credit union, Mitchell marshals a number of arguments designed to generate an "injury-in-fact." Chief among these arguments is the fact that his membership in Kemba entitles him, by virtue of the co-sharing agreement with Buckeye and other credit unions, to enjoy certain services of Buckeye. Two other courts in this judicial district have rejected this precise argument in actions brought by Mitchell himself. In *Mitchell v. Toledo Metro Credit Union*, No. 3:18CV784, 2018 WL 5435416, at *3 (N.D. Ohio Oct. 29, 2018), the court rejected the identical argument, reasoning that "[t]he co-sharing agreement simply entitles Kemba members to use the [defendant credit union's] ATMs and branch locations. *See* https://www.kemba.com/services-tools/account-services/shared-branches.html. It does not allow Kemba members to conduct online banking on another credit union's website." *See Mitchell*, 2018 WL 3109591, at *2 (highlighting the same restrictions on the co-sharing agreement, and noting that Mitchell had not alleged that he intends to use the defendant credit union's banking services or visit a physical location).

Here, while Mitchell alleges that he was unable to use the online services offered through the co-sharing agreement due to barriers on Buckeye's website, he has not alleged that he has

6

plans to access Buckeye's ATMs or visit Buckeye's physical branch locations.[2] (*See* Compl. ¶¶ 4, 6.) *See Griffin v. Dep't of Labor Fed. Credit Union*, 293 F. Supp. 3d 576, 579–80 (E.D. Va. 2018) (finding that the plaintiff lacked standing where he did not allege that he planned to become a member or even planned to investigate possible membership).[3] The cooperative sharing arrangement, therefore, cannot be used to establish standing.

Mitchell also suggests that he has suffered the indignity of knowing that the website is inaccessible to disabled individuals. As a threshold matter, Mitchell has not alleged a dignitary harm. *See Griffin*, 293 F. Supp. 3d at 579 (rejecting a similar argument, in part, where the plaintiff only alleged that he was "deterred" from utilizing services on the defendant's website). Courts have rejected such interest in Title III claims. *See Carello*, 2018 WL 3740545, at *2 (explaining that "[i]n contrast to the role of dignitary interest in Title I claims, courts have consistently held that a plaintiff bringing a Title III claim must demonstrate that he has an intent to use the accommodation in question in the future"). "This is in part due to the fact that Title III provides for injunctive relief only." *Id.*; *see also Griffin*, 293 F. Supp. 3d at 579 (rejecting a similar claim, noting that the plaintiff "does not cite a single ADA case where a dignitary harm alone was sufficient to confer standing on a plaintiff who otherwise was not allowed to patronize a particular accommodation"). Indeed, to permit automatic standing for any "disabled person who learned of any barrier to access" would "essentially eliminat[e] the injury-in-fact

---

[2] Nor could he advance a plausible allegation that he intends to visit these locations or use Buckeye's ATMs. Buckeye maintains—and Mitchell does not deny—that he is a resident of Cincinnati. (Opp'n at 42.) Buckeye's nearest branch location or ATM, located in Canton, Ohio, would be more than 200 miles away. *See* https://www.buckeyecu.org/why-buckeye-cu/our-branches/ (lasted visited February 27, 2019). *See, e.g., Mitchell*, 2018 WL 3109591, at *4.

[3] Mitchell does allege that he was unable to "independently and privately investigate[]" the location of branch offices "as sighted individuals can do[,]" and that these barriers "deterred" him from visiting the physical locations.

requirement."[4] *Griffin*, 293 F. Supp. 3d at 579.

Finally, Mitchell argues that he can assert standing by virtue of his status as a "tester." (*See* Opp'n at 73.) "Testers are . . . individuals with disabilities who visit places of public accommodation to determine their compliance with Title III." *Harty v. Burlington Coat Factory of Penn., L.L.C.*, Civ. Action No. 11-01923, 2011 WL 2415169, at *5 n.5 (E.D. Pa. June 16, 2011). While Mitchell does not allege that he is a "tester" in his complaint, or that he intends to return to the website in the future for purposes of testing ADA compliance, it is true that, in addition to this action and the two previously dismissed lawsuits, Mitchell has filed multiple other lawsuits in this jurisdiction alone testing the Title III compliance of credit union websites. *See Mitchell v. Geauga Credit Union, Inc.*, No. 1:18-cv-429 (N.D. Ohio, voluntarily dismissed Mar. 14, 2018); *Mitchell v. Topmark Fed. Credit Union*, 3:18-cv-167 (N.D. Ohio, voluntarily dismissed Mar. 29, 2018); *Mitchell v. CanDo Credit Union*, 3:17-cv-2591 (N.D. Ohio, voluntarily dismissed March 16, 2018); *Mitchell v. Beacon Mut. Fed. Credit Union*, 3:17-cv-2594 (N.D. Ohio, voluntarily dismissed March 23, 2018); *Mitchell v. Superior Savings Credit Union*, 5:17-cv-2587 (N.D. Ohio, voluntarily dismissed February 27, 2018). While his arguable status as a "tester" does not necessarily preclude standing, the Court finds that this status, alone, does not confer standing.

---

He does not allege, however, that he was otherwise unable to identify the locations of branches or ATMs or was prevented from using Buckeye's ATMs or visiting the branch facilities or had any plans to visit. (*Id.* ¶¶ 16, 17.)

[4] Additionally, Mitchell relies on *Gathers v. 1-800-Flowers.com, Inc*., No. 17-cv-10273-IT, 2018 WL 839381, *4 (D. Mass. Feb. 12, 2018) and cases like it where an ADA plaintiff suffered an injury-in-fact from being denied the opportunity to use websites to learn about products. (Opp'n at 80.) Cases like *Gathers* are inapposite as they involve entities whose products and services were available to the general public. *See, e.g., Gniewkowski v. Lettuce Entertain You Enters., Inc*., 251 F. Supp. 3d 908, 911–12 (W.D. Pa. 2017) (Defendant was a federally chartered bank, which "offer[ed] and advertise[d] a full range of financial solutions and banking expertise to the general public through its website.") As discussed *supra*, Buckeye's products and services are not available to the general public, so Mitchell's inability to research products and services for which he was not entitled cannot demonstrate an injury-in-fact.

Even though the Sixth Circuit has never ruled on the subject, other circuits have held that status as an "ADA tester" does not foreclose standing for a claim under the ADA. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013); *see also Colorado Cross Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) ("[A]nyone who has suffered an invasion of the legal interest protected by Title III may have standing, regardless of his or her motivation in encountering the invasion.") Still, the majority of these courts have required an "ADA tester" to otherwise meet the Article III standing requirements. *See Houston*, 733 F.3d at 1334 (noting that a tester must nevertheless "show a real and immediate threat of future injury"); *Payne v. Chapel Hill N. Props., LLC*, 947 F. Supp. 2d 567, 576 (M.D.N.C. 2013) (finding that "the better approach is that a plaintiff cannot use her status as a tester to satisfy the standing requirements where she would not have standing otherwise") (quotation marks and citations omitted); *Norkunas v. Park Road Shopping Ctr., Inc.*, 777 F. Supp. 2d 998, 1005 (W.D.N.C. 2011) (rejecting "this manner of 'drive-by' Title III lawsuit" and noting that "the law makes clear that a Title III plaintiff cannot use her status as a tester to satisfy the standing requirements where she would not have standing otherwise") (collecting cases); *see also Kramer*, 656 F. Supp. 2d at 747 ("[A] plaintiff's claim that [he] visited the facility as a 'tester' and intends to visit the Facility to verify its compliance or non-compliance with the ADA, does little to support [his] allegation that [he] is truly threatened by an immediate future injury.") (quotation marks and citation omitted). Of course, here, Mitchell has not advanced any allegations relative to his status as a "tester." Even if he had, "the naked assertion of a desire to return to a defendant establishment for the sole purpose of confirming ADA-compliance, without more, is insufficient to establish standing." *Norkunas*, 777 F. Supp.

2d at 1005; *see, e.g., Mosley v. Kohl's Dep't Stores, Inc.*, No. 18-11642, 2019 WL 95448, *3 (E.D. Mich. Jan. 3, 2019) (finding ADA tester did not establish standing where she failed to demonstrate "a non-speculative, imminent threat of repeated injury to establish an 'injury in fact'"); *Mitchell*, 2018 WL 3109591, at *5 (rejecting Mitchell's argument in similar action, noting: "Defendant does not offer its services to the general public. Instead, it only offers its services to a limited field.").

Mitchell has failed to meet his burden of demonstrating standing. He cannot, therefore, maintain this action.

V. **Conclusion**

For the foregoing reasons, the Court grants Buckeye's motion to dismiss. Mitchell's complaint is dismissed for lack of standing.

**IT IS SO ORDERED**.

Dated: March 5, 2019

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**